[No. A042751. First Dist., Div. Two. Nov. 9, 1989.]

PARKMERCED COMPANY, Plaintiff and Respondent, v.
SAN FRANCISCO RENT STABILIZATION AND ARBITRATION
BOARD, Defendant and Appellant;
MARGOT ABENHEIM, Real Party in Interest and Appellant.

COUNSEL

Louise H. Renne, City Attorney, Judith A. Boyajian and Richard A. Judd, Deputy City Attorneys, for Defendant and Appellant.

Steven A. Schectman and Schectman, Weaver, Wartelle & McCurdy for Real Party in Interest and Appellant.

Richard J. Kilmartin, Samuel G. Ware and Knight, Boland & Riordan for Plaintiff and Respondent.

OPINION

KLINE, P. J.—San Francisco Rent Stabilization and Arbitration Board (Rent Board) and Margot Abenheim (Abenheim) appeal a decision granting a writ of administrative mandamus in favor of respondent Parkmerced Company (Parkmerced). They assert the court erred in concluding Abenheim was not entitled to the protection of the San Francisco Residential Rent Stabilization and Arbitration Ordinance (Rent Ordinance). We shall reverse.

### BACKGROUND

Abenheim's brother, Clarence Honey, first executed a written lease with Parkmerced for the apartment located at 28 Pinto Avenue on July 21, 1976. The lease was thereafter renewed and Abenheim moved in with her brother on September 1, 1981.

For the next four years Abenheim and Honey lived in the apartment; each year Honey renewed the lease and listed Abenheim on Parkmerced's form. Each month Abenheim used a personal check bearing her name to pay rent to Parkmerced.

In 1985 Honey decided to move and notified Parkmerced that he would not be renewing his lease; he indicated his sister might be interested in staying on in the apartment. The rent was then $462.34. When Abenheim applied to have a lease issued in her name alone she was informed that she could only remain if she agreed to pay $607 a month in rent, an increase of $144.66 a month. If, as Abenheim maintained, she was protected as a continuing tenant under the Rent Ordinance, the maximum allowable rent would have been approximately $480 per month. (S.F. Admin. Code,

§ 37.3(a)(1) [allowing an annual 4 percent rent increase on rent controlled units].)

Abenheim executed a lease at the new, higher rent and petitioned the Rent Board to challenge the increase.

The hearing at issue was held before the Rent Board on February 19, 1987.[1] The hearing officer concluded that Abenheim was a tenant within the meaning of section 37.2(r) of the Rent Ordinance, and thus was entitled to the rent control protections contained therein. The hearing officer further determined that since the September 1985 rent increase exceeded the lawful limits by more than 26 percent, the increase was "null and void in its entirety." Parkmerced appealed that decision to the Rent Board, where it was denied on April 28, 1987.

Parkmerced filed a first amended petition for writ of mandate on November 24, 1987.[2] The court found that Abenheim first incurred an obligation to pay rent to Parkmerced on September 1, 1985, when she signed a written lease. The court reasoned that because the lease was the first executed between the parties, the rent requested did not violate the ordinance since it was not an "increase" over any prior rental obligation. The court therefore issued a writ of mandate on May 3, 1988.

The Rent Board noticed this appeal on June 1, 1988, and filed a return to the peremptory writ on June 3, 1988. The peremptory writ has been stayed pending our consideration of this appeal.

### DISCUSSION

The Rent Ordinance, which limits the rent increases that legitimately may be imposed on "tenants in occupancy," defines a tenant as "[a] person entitled by written or oral agreement, sub-tenancy approved by the landlord, or by sufferance, to occupy a residential dwelling unit to the exclusion of others." (S.F. Admin. Code, §§ 37.3(a) and 37.2(r).)[3] The Rent Ordinance thus clearly focuses on occupancy as the factor which triggers rent control protection.

---

[1] The first hearing in this matter was held on November 19, 1987. However, the tape recording of that hearing was not clear enough to permit judicial review; the parties thus stipulated to a de novo hearing which could be preserved for review.

[2] Parkmerced's initial petition for writ of mandate challenged the decision resulting from the first Rent Board hearing in the matter, where the tape recording of the hearing was inadequate for review.

[3] All code references shall hereinafter be to the San Francisco Administrative Code, unless otherwise indicated.

The trial court concluded that because Abenheim first incurred a rental obligation to Parkmerced on September 1, 1985, there could be no illegal rent increase, because an increase presupposes a prior rent obligation. This reasoning is flawed, in our opinion, because it ignores the fact that the ordinance protects those who legally occupy a rental unit, regardless of the basis of the person's obligation to pay rent.

As we read the Rent Ordinance, Abenheim satisfies the definition of "tenant" and is protected by the rent increase limitations contained therein. Since 1981 Parkmerced was aware of, and by its silence agreed to, Abenheim living in the apartment with her brother. Each year Honey submitted to Parkmerced an application for lease rental which listed Abenheim as an occupant of the apartment; *pursuant to paragraph 25 of Parkmerced's lease these applications were incorporated into Honey's leases.* Thus, because Abenheim was entitled to occupy the unit pursuant to a written agreement—Honey's leases—she falls squarely within the purview of section 37.2(r).

Parkmerced's repeated acceptance of Abenheim's checks over a long period of time provides additional evidence that Parkmerced consented to Abenheim's tenancy.[4] "[I]t is well established that a tenancy need not be created by a lease but *may be created by occupancy by consent.*" (*Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 750 [161 Cal.Rptr. 322], italics added.) " '[I]n the ordinary course of business the occupancy of premises by one person *with the consent of the owner* creates the relation of landlord and tenant . . . .' " (*Meyer* v. *Parobek* (1953) 119 Cal.App.2d 509, 513 [259 P.2d 948], italics added; accord *Ross* v. *City of Long Beach* (1944) 24 Cal.2d 258, 263 [148 P.2d 649].) In light of the undisputed evidence that Abenheim (1) was listed as an occupant on Parkmerced's own forms; and (2) paid the rent with her personalized checks over a four-year period Parkmerced cannot successfully maintain it did not agree to her tenancy.[5]

---

[4] In the trial court Parkmerced argued its acceptance of Abenheim's checks ought not be used as evidence that it agreed to her tenancy since it never investigated to see whose name appeared on the rent payments. Parkmerced complained that if its acceptance of checks from persons who are not lease signatories can be used as evidence of a lawful tenancy it will be forced at great expense to examine each check from more than 3,000 units.

This claim does not affect our conclusion that acceptance of such checks clearly is a fact relevant to determining whether an individual occupied a rental unit with the landlord's consent. The fact that Parkmerced, which owns many units, may be forced to review many checks, and thus may be inconvenienced more than a landlord who owns only a few units, is not reason to alter our decision.

[5] Respondent maintains it could not have established a landlord-tenant relationship with Abenheim in September 1981 (when she moved into the apartment) because by that time it already had leased the entire premises to Honey. This argument is unpersuasive, since it over-

Furthermore, the court erred in summarily concluding Abenheim had no obligation to pay rent until she signed the formal rental agreement in September 1985.[6] In *Ellingson* v. *Walsh, O'Connor & Barneson* (1940) 15 Cal.2d 673, 675 [104 P.2d 507] the court concluded that "a tenant of real property is not liable for rent solely by reason of the contract of lease." The court explained that "[t]enancies in property need not necessarily be created by valid leases. One may become a tenant at will or a periodic tenant under an invalid lease, or without any lease at all, by occupancy with consent. Such tenancies carry with them the incidental obligation of rent, and the liability therefore arises not from contract but from the relationship of landlord and tenant. The tenant is liable by operation of law." (*Ibid.*; see also *Schmitt* v. *Felix* (1958) 157 Cal.App.2d 642, 647 [321 P.2d 473] ["liability for rent arises in one of two ways, either from a contractual agreement with the property owner or by actual occupancy of the premises with the owner's consent . . . ."].) Because the obligation to pay rent may exist without a written lease the trial court incorrectly assumed the higher rent could not be an "increase" because Abenheim had not previously been obligated to pay rent.

Finally, interpreting the Rent Ordinance to extend protection to tenants based on legitimate occupancy is in keeping with the purpose of the legislation. ▪ "The ordinance was enacted to respond to two principal factors: (a) a critically low vacancy rate within the city and county, and (b) excessive, unregulated rent increases. The combination of those factors had a detrimental effect on substantial numbers of San Francisco Renters . . . . The clear objective of the ordinance and the compelling public policy which gave birth to its enactment, was *the extension of some measure of protection to tenants in residence*." (*Tappe* v. *Lieberman* (1983) 145 Cal.App.3d Supp. 19, 23 [193 Cal.Rptr. 514], italics added.) ▪ There is absolutely no indication that this protection was intended to be limited to those tenants who sign formal lease agreements.

▪ It is well settled that remedial legislation, such as the rent control ordinance at issue, must be liberally construed to effect its purposes. (Sutherland, Statutory Construction (4th ed. 1986) § 60.01, p. 55.) ▪ In contravention of this principle, Parkmerced urges us to adopt a

looks the possibility that Honey and Abenheim could have occupied the premises as cotenants.

Parkmerced also argues that because Abenheim was not legally bound by its leases she is not entitled to claim the rent control benefits "arising from those leases." This argument is unavailing, since Abenheim is protected by virtue of her status as a *legitimate tenant*. Thus, the rent control benefits do not "arise from" the leases.

[6] Parkmerced claims that Abenheim was simply satisfying *Honey's* obligation to pay rent when she submitted her checks to Parkmerced from 1981 to 1985.

narrow and unduly restrictive interpretation of the Rent Ordinance which would undermine the intent of the legislation and deny rent control protection to a long-term resident who occupied her apartment with the owner's knowledge and consent, albeit without a formal lease. We decline to do so.

■ Parkmerced also asserts its actions were valid under section 37.9(a)(5). That section, which sets forth 13 reasons justifying eviction, provides that a landlord may regain possession if, after written request or demand, a tenant refuses to renew or extend a lease which has terminated.[7] Parkmerced argues that once Honey refused to renew his lease it had the right to recover possession of the apartment—thereby creating a vacancy—and relet it to Abenheim at a decontrolled rate. This argument, which was explicitly included in the court's statement of decision, is based on an unsupportable manipulation of the Rent Ordinance. Section 37.9 simply specifies the limited reasons supporting *eviction;* there is no evidence that it was intended, or legitimately could be used, to define the class of persons covered by the Rent Ordinance, especially when the Rent Ordinance contains an explicit definition of the persons intended to be protected. (See §§ 37.2(r), 37.3(a).)[8]

For the foregoing reasons, the judgment must be reversed.

Benson, J., and Peterson, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 14, 1990. Panelli, J., was of the opinion that the petition should be granted.

---

[7] Section 37.9(a) provides that "A landlord shall not endeavor to recover possession of a rental unit unless: . . . (5) The tenant, who had an oral or written agreement with the landlord which has terminated, has refused after written request or demand by the landlord to execute a written extension or renewal thereof for a further term of like duration and under such terms which are materially the same as in the previous agreement provided that such terms do not conflict with any of the provisions of this chapter . . . ."

[8] Abenheim and the Rent Board also claim the court erred in even reaching the question of when Abenheim became obligated to pay rent; they argue that is an issue which ought to be settled by the relevant administrative agency—the Rent Board. As we already have concluded that Abenheim was obligated to pay rent prior to signing the lease with Parkmerced it is apparent that we believe the record contained sufficient evidence to make that determination and thus no remand is necessary.