Filed 1/21/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| MOSSER COMPANIES,<br><br>     Plaintiff and Appellant,<br><br>        v.<br><br>SAN FRANCISCO RENT<br>STABILIZATION AND ARBITRATION<br>BOARD,<br><br>     Defendant and Respondent. | A141134<br><br><br><br>(San Francisco City and County<br>Super. Ct. No. CPF-12-512697) |


Mosser Companies (landlord) owns a nine-unit residential apartment building on Fell Street in San Francisco. The apartment is subject to rent control under the San Francisco Residential Rent Stabilization and Arbitration Ordinance (S.F. Admin. Code, § 37.1 et seq.; ordinance), which limits rent increases to tenants in occupancy (*id.*, § 37.3, subd. (a)). Under Civil Code section 1954.53, which provides that "an owner of residential real property may establish the initial rental rate for a dwelling or unit" (subd. (a)), local jurisdictions are authorized to impose rent control limiting rate increases until "the original occupant or occupants who took possession of the dwelling or unit pursuant to the rental agreement with the owner no longer permanently reside there" (subd. (d)(2)). The question before us is whether the son of parents who years before rented a unit in landlord's building, and who with landlord's consent resided with his parents when the rental agreement was entered, is an "original occupant" within the meaning of the statute, precluding the landlord from establishing a new unrestricted rental rate for the apartment when the son remains in the apartment after the parents have departed. The San Francisco Rent Stabilization and Arbitration Board (rent board) and the trial court concluded that

1

the son, although a minor when the rental agreement was entered and not a signatory to the rental agreement, is nonetheless an "original occupant" entitled to the continued protection of the rent control provision. Although a compelling policy argument can be made for qualifying rent control restrictions when a tenancy passes from one generation to the next, the current statute incorporates no such qualification. We therefore conclude that the rent board correctly prohibited landlord from increasing the rent to the son above the rent control limit when his parents vacated the apartment, and the trial court correctly denied landlord's petition for a writ of mandate challenging the rent board's action.

## I. Facts and Procedural History

In November 2003, Parmanathan and Marilyn Govender moved into a Fell Street apartment in San Francisco with their three children, Brian, Glendon and Michelle.[1] Brian was then 13 years old. A written lease, signed by Parmanathan and Marilyn, provided a term of 12 months to continue thereafter on a month-to-month basis until terminated by written notice. Parmanathan and Marilyn are the only tenants named in the lease. The lease provides "that the Premises is to be used exclusively as the primary and principal residence of the named Tenant(s) who are the only 'Original' Tenants of the Premises." The children are not mentioned in the lease, but it is undisputed that the landlord approved their occupancy. The initial monthly rent was $1,495.

The Govender family lived in the apartment for almost nine years. In August 2012, after two of their three children had left home, Parmanathan and Marilyn moved out of the apartment. Brian, then aged 23, did not move with his parents but continued to live in the apartment. A few days after Parmanathan and Marilyn moved out, the landlord served notice that it was raising the monthly rent from $1,681.75 to $3,295. This amount substantially exceeds the rental rate permitted by the ordinance so long as the original occupants reside in the premises.

A local rent control ordinance, such as the one in San Francisco, may not limit the amount of rent charged when "the original occupant or occupants who took possession of

---

[1] Given a shared last name, we hereafter refer to the Govenders by their first names.

2

the dwelling or unit pursuant to the rental agreement with the owner no longer permanently reside there." (Civ. Code, § 1954.53, subd. (d)(2).) The landlord asserted that he was permitted to raise the rent beyond local rent control limits because Parmanathan and Marilyn were the only original occupants under the lease and they no longer lived in the apartment.

In September 2012, Parmanathan, Marilyn and Brian filed a tenant petition with the rent board alleging that the proposed rent constituted an unlawful rent increase. The Govenders acknowledged that Parmanathan and Marilyn were no longer living in the apartment but asserted that Brian was an original occupant entitled to continued rent control.

An evidentiary hearing was conducted before a rent board administrative law judge in October 2012. The parties stipulated that Brian, then aged 13, moved into the apartment with his parents with the approval of the landlord when the tenancy commenced in November 2003 and remained in the apartment when his parents vacated the apartment in August 2012, when Brian was 23 years old. The judge found the rent increase unlawful because Brian "is an original occupant who took possession of the unit pursuant to the original rental agreement with the owner and he continues to permanently reside in the unit." The landlord appealed the decision to the rent board, which affirmed the decision in December 2012.

The landlord filed a petition for writ of administrative mandate to overturn the rent board's decision. (Code Civ. Proc., § 1094.5.) The trial court denied the writ petition and, in doing so, adopted "the rent board's interpretation that the minor who went to the premises legally with his parent is [an] original occupant" entitled to continued rent control after his parents vacated the apartment. This appeal followed.

## II. Discussion

A. *Rent Control Overview*

Rent control attempts "to accommodate the conflicting interests of protecting tenants from burdensome rent increases while at the same time ensuring that landlords are guaranteed a fair return on their investment." (*Pennell v. San Jose* (1988) 485 U.S. 1,

3

13.) There are three general types of rent control laws. (Friedman et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2014) ¶ 2:707, p. 2D-4.) The most restrictive type, known as vacancy control, sets the maximum rental rate for a unit and maintains that rate when the unit is vacated and another tenant takes occupancy.[2] (*Id.*, ¶ 2:708, p. 2D-4.) A moderate type of rent regulation, known as vacancy decontrol-recontrol, allows a landlord to establish the initial rental rate for a vacated unit but, after the rental rate is fixed, limits rent increases as long as the tenant occupies the unit. (*Id.*, ¶ 2:710, p. 2D-5.) The least restrictive type, permanent decontrol, limits rent increases only on presently occupied units; when vacated, the unit becomes unregulated and landlords are free to determine the initial rental rate and any future rent increases. (*Id.*, ¶ 2:711, p. 2D-5.) "Most rent control measures are exhaustive in scope: Aside from capping permissible rental rates and rent increases, they regulate landlord conduct that might have the effect of a 'rent increase' (e.g., decrease in housing services); and they also impose extensive 'eviction controls,' restricting the grounds upon which tenants may be evicted at a landlord's will . . . and imposing special eviction procedures." (*Id.*, ¶ 5:1, p. 5-1.)

"Presently, in California, approximately 14 jurisdictions control rents on dwellings" and many more control rents on mobile homes. (Friedman et al., Cal. Practice Guide: Landlord-Tenant, *supra*, ¶ 2:702, p. 2D-4.) Historically, several municipalities had a vacancy control type of residential rent regulation that prohibited rent increases when a unit is vacated. (*Id.*, ¶ 2:708, p. 2D-4.) Vacancy control ordinances were abolished in 1995 by the Costa-Hawkins Rental Housing Act (Civ. Code, § 1954.50 et seq.; hereafter the Costa-Hawkins Act or Act), which provides, with limited exceptions, that "an owner of residential real property may establish the initial rental rate for a dwelling or unit." (Civ. Code, § 1954.53, subd. (a).) The Costa-Hawkins Act "established 'what is known among landlord-tenant specialists as "vacancy decontrol." ' " (*Action*

---

[2] A modified version of this type of rent regulation, operative in the State of New York, permits an increase upon vacancy equal to a percentage of the prior rental rate. (N.Y. State Div. of Housing and Community Renewal, Off. of Rent Admin., Fact Sheet # 5: Vacancy Leases in Rent Stabilized Apartments <http://www.nyshcr.org/Rent/FactSheets/orafac5.pdf> [as of Jan. 21, 2015].)

4

*Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1237.) "The effect of this provision was to permit landlords 'to impose whatever rent they choose at the commencement of a tenancy.' [Citation.]" (*Ibid.*) San Francisco's ordinance is consistent with the Costa-Hawkins Act in allowing a landlord to set the initial rental rate on vacated units. (S.F. Admin. Code, § 37.3, subd. (d)(1).)

B.  *The Costa-Hawkins Act's Vacancy Decontrol Provisions*

The Costa-Hawkins Act addresses changes in occupancy and the impact of those changes on rental rates. An understanding of the Act requires a contextual reading of these provisions. Civil Code section 1954.53, subdivision (d) provides:

"(1) Nothing in this section or any other provision of law shall be construed to preclude express establishment in a lease or rental agreement of the rental rates to be applicable in the event the rental unit subject thereto is sublet. Nothing in this section shall be construed to impair the obligations of contracts entered into prior to January 1, 1996.

"(2) If the original occupant or occupants who took possession of the dwelling or unit pursuant to the rental agreement with the owner no longer permanently reside there, an owner may increase the rent by any amount allowed by this section to a lawful sublessee or assignee who did not reside at the dwelling or unit prior to January 1, 1996.

"(3) This subdivision does not apply to partial changes in occupancy of a dwelling or unit where one or more of the occupants of the premises, pursuant to the agreement with the owner provided for above, remains an occupant in lawful possession of the dwelling or unit, or where a lawful sublessee or assignee who resided at the dwelling or unit prior to January 1, 1996, remains in possession of the dwelling or unit. Nothing contained in this section shall be construed to enlarge or diminish an owner's right to withhold consent to a sublease or assignment.

"(4) Acceptance of rent by the owner does not operate as a waiver or otherwise prevent enforcement of a covenant prohibiting sublease or assignment or as a waiver of an owner's rights to establish the initial rental rate, unless the owner has received written notice from the tenant that is party to the agreement and thereafter accepted rent."

C. *Rent decontrol under the Costa-Hawkins Act occurs when all lawful occupants who took possession at the start of the tenancy vacate the dwelling.*

The parties dispute the meaning of the Costa-Hawkins Act's provision that a landlord may set the initial rental rate for a dwelling "[i]f the original occupant or occupants who took possession of the dwelling . . . pursuant to the rental agreement with the owner no longer permanently reside there" (Civ. Code, § 1954.53, subd. (d)(2)) and the related provision that a landlord's right to set the rental rate "does not apply to partial changes in occupancy of a dwelling . . . where one or more of the occupants of the premises, pursuant to the agreement with the owner provided for above, remains an occupant in lawful possession of the dwelling or unit" (§ 1954.53, subd. (d)(3)).

"When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.]" (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165-166.)

An "occupant" is commonly defined as "one who occupies a particular place; *esp[ecially]*: RESIDENT." (Merriam-Webster's Collegiate Dict. (11th ed. 2007) p. 858, col. 1.) The plain meaning of an "original occupant . . . who took possession of the dwelling or unit pursuant to the rental agreement" (§ 1954.53, subd. (d)(2)) is an individual who has resided in the dwelling from the start of the tenancy with the landlord's permission. The landlord argues that "taking possession is a legal term of art" requiring the person to have acquired the *legal right* of possession which is acquired only by parties to the lease.

6

"Possession" is a commonly understood term normally referring to physical possession. The landlord's contention limiting the term to parties to a legal agreement is inconsistent both with this common understanding and with the terms used in the statute. The statute refers to an "occupant" rather than a "tenant," "lessee," or "party." These terms have distinct and well-established meanings, making it unlikely the Legislature used the term "occupant" when it meant party to a rental agreement. That the Legislature's use of the term "occupant" was deliberate and intended to signify something distinct from a party to the lease is confirmed when the statute is read as a whole. "[W]e consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.' [Citation.]" (*Sierra Club v. Superior Court, supra,* 57 Cal.4th at p. 166.) Section 1954.53 subdivisions (d)(2) and (3) provide for rent decontrol when "occupants" vacate the dwelling while subdivision (d)(4) provides there is no waiver of a landlord's sublease prohibition unless the landlord received "written notice from the tenant that is party to the agreement and thereafter accepted rent." The Legislature's use of distinct terms indicates different intended meanings. Had the Legislature meant rent decontrol to occur when the party to the rental agreement vacates, it could easily have used the term "party," as it did in subdivision (d)(4) concerning sublease prohibition waivers. " '[W]hen different words are used in contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that a difference in meaning was intended.' [Citations.]" (*Kleffman v. Vonnage Holdings Corp.* (2010) 49 Cal.4th 334, 343.)

The legislative history for the Costa-Hawkins Act contains no clear statement of the intended meaning of the provisions at issue. There are several indications, however, that the Legislature meant the term "occupant" to be understood in the normal sense of the term, not limited to a person who is a party to the rental agreement. Legislative and executive reports on the Act consistently state that rent decontrol applies when all original *occupants* vacate the premises, not when tenants who are parties to the lease vacate. In summarizing the provision at issue here, a Senate committee analysis states: "If

7

one or more of the occupants of the premises remains an occupant in lawful possession, the rent may not be increased." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1164 (1995-1996 Reg. Sess.) as amended July 20, 1995, p. 4.) The Department of Housing and Community Development submitted an enrolled bill report to the Governor describing the statute as one permitting a landlord to increase rent "when the original occupant no longer permanently resides in the dwelling." (Dept. Housing & Community Development, Enrolled Bill Rep., Assem. Bill No. 1164 (1995-1996 Reg. Sess.) as amended July 20, 1995, p. 3.)[3]

Our interpretation of the Costa-Hawkins Act is also consistent with its narrow and well-defined purpose, which is to prohibit the strictest type of rent control that sets the maximum rental rate for a unit and maintains that rate after vacancy. (Legis. Analyst, analysis of Assem. Bill No. 1164 (1995-1996 Reg. Sess.) p. 1.) The analysis states that "[p]roponents view this bill as a moderate approach to overturn extreme vacancy control ordinances" (*id*. at p. 6), noting that "[f]ive vacancy control cities would be affected" (*id.* at p. 5). The report observes that an additional nine cities "impose rent control on residential units" but says nothing about narrowing the scope of those ordinances on the subject at issue here. (*Ibid.*)

"The Legislature is presumed to know existing law when it enacts a new statute, including the existing state of the common law. [Citations.]" (*Arthur Anderson v. Superior Court* (1998) 67 Cal.App.4th 1481, 1500-1501.) When the Costa-Hawkins Act was adopted , the San Francisco ordinance contained the current definition of a "tenant" entitled to rent control as "[a] person entitled by written or oral agreement, sub-tenancy approved by the landlord, or by sufferance, to occupy a residential dwelling unit to the exclusion of others." (S.F. Admin. Code, § 37.2, subd. (t) [originally § 37.2, subd. (r)].)

---

[3]   The California Supreme Court has "routinely found enrolled bill reports, prepared by a responsible agency contemporaneous with passage and before signing, instructive on matters of legislative intent." (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 934, fn. 19.)

To clarify, Assembly Bill No. 1164 was last amended July 20, 1995, not July 20, 1994, as stated in the the enrolled bill report.

8

Also prior to adoption of the Act, this ordinance was held to protect lawful occupants from rent increases even if not a party to the lease. (*Parkmerced Co. v. San Francisco Rent Stabilization & Arbitration Bd.* (1989) 215 Cal.App.3d 490.) In *Parkmerced*, a landlord was precluded from raising the rent when the lessee vacated the apartment and his sister, who also had occupied the residence with the landlord's knowledge and implicit approval, remained in occupancy. The court pointed out that the rent ordinance "clearly focuses on occupancy as the factor which triggers rent control protection." (*Id.* at p. 493.) Further, "[t]here is absolutely no indication that this protection was intended to be limited to those tenants who sign formal lease agreements." (*Id.* at p. 495.) The Legislature was presumably aware of San Francisco's ordinance, and its judicial construction, when adopting the Act, yet expressed no intention to preempt the law. Nothing in the language, legislative history, or purpose of the Act suggests an intention to abrogate San Francisco's broad definition of a tenant or to otherwise prohibit cities from extending rent control to all original lawful occupants whether or not parties to the lease.

Another division of this court has previously interpreted the reference in the Costa-Hawkins Act to occupants "pursuant to the rental agreement" to mean lawful occupants, whether or not parties to the rental agreement. In *DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, a lease named one person as the tenant but expressly permitted occupancy by "2 (two) roommates" not identified by name. Jason Meggs was one of the roommates; he took occupancy at the start of the lease term after completing an application to rent requested by the landlord, DeZerega.[4] (*Id.* at pp. 31-32.) Nine months later, the named tenant moved out and DeZerega filed an unlawful detainer action against Meggs. (*Id.* at pp. 33-34.) The court held that Meggs could not be evicted because he met the definition of a tenant under a Berkeley ordinance prohibiting tenant evictions without cause. (*Id.* at pp. 38-42.) The court rejected the landlord's argument that the Act provides

---

[4] Landlord misreads *DeZerega* in stating that Meggs took occupancy years after the lease term commenced. The mistake may derive from the fact that two leases with different named tenants are mentioned in the opinion. (*DeZerega v. Meggs, supra,* 83 Cal.App.4th at pp. 31-32.) The operative lease was executed in March 1997 with Michael Nnadi-Nwazurumike, under which Meggs was an original occupant. (*Ibid.*)

9

no protection to occupants who are not named tenants in the lease. (*DeZerega*, at pp. 40-42.) The court stated that a person occupies the premises "pursuant to the rental agreement with the owner" (§ 1954.53, subd. (d)(2)) if he or she does so with the owner's permission. (*DeZerega,* at p. 41.) A lawful occupancy of this nature "is treated as a continuation of the original occupancy, even though the named 'tenant' under the rental agreement may have vacated." (*Ibid.*)

D. *An original lawful occupant remains in possession of the apartment*.

The rent board found the rent increase at issue here unlawful because Brian "is an original occupant who took possession of the unit pursuant to the original rental agreement with the owner and he continues to permanently reside in the unit." The evidence fully supports this finding. The parties stipulated that Brian, then aged 13, moved into the apartment with his parents with the approval of the landlord when the tenancy commenced in November 2003 and remained in the apartment when his parents vacated the apartment in August 2012, when Brian was 23 years old. Brian's parents alone are parties to the lease but Brian is an original lawful occupant of the apartment entitled to protection under the ordinance.

The landlord argues that our holding allows a minor "to inherit [his or her] parent's tenancy" and grants rights without obligations. The argument is mistaken. Brian did not "inherit" his parent's tenancy but has his own personal right of occupancy. We also note that Brian's rights have concomitant obligations. When Brian's parents vacated the apartment and Brian, as an adult, chose to remain in occupancy, he became a tenant obligated to pay rent. Tenancies in property need not be created by written leases. (*Parkmerced Co. v. San Francisco Rent Stabilization & Arbitration Bd., supra,* 215 Cal.App.3d at p. 495.) One may become a tenant by occupancy with consent. (*Ibid.*) " 'Such tenancies carry with them the incidental obligation of rent, and the liability therefore arises not from contract but from the relationship of landlord and tenant. The tenant is liable by operation of law.' [Citations.]" (*Ibid.*)

10

E. *The landlord's public policy arguments are matters for the Legislature, not the courts.*

The landlord argues it is unwise economic policy to protect occupants who begin their residency as minors and continue in the apartment as adults after their parents vacate. The argument raises a public policy issue that must be addressed to the Legislature. Many permutations to rent regulation are possible. It is not, as the landlord suggests, inherently unreasonable to apply rent control to lawful occupants who share an apartment with tenants named in the lease. Rent control of this scope is not unprecedented among rent control jurisdictions. We note, for example, that the State of New York expressly protects a tenant's family members who reside with the tenant from rent increases upon the named tenant's death or departure from the apartment. (N.Y. Comp. Codes, R. & Regs., tit. 9, § 2523.5, subd. (b)(1); see N.Y. Div. of Housing & Community Renewal, Off. of Rent Admin., Fact Sheet #30: Succession Rights <http://www.nyshcr.org/Rent/FactSheets/orafac30.pdf> [as of Jan. 21, 2015].) The protection encompasses minor children who reside with the named tenant. (E.g., *Doubledown Realty Corp. v. Harris* (1985) 128 Misc.2d 403 [494 N.Y.S.2d 601].)

Moreover, the protection afforded here is limited in scope to *lawful* and *original* occupants. A rent-controlled apartment cannot, as landlord fears, be passed on freely "from friend to friend or generation to generation." Only those occupants who reside in the apartment at the start of the tenancy and do so with the landlord's express or implicit consent are protected from unregulated rent increases. Family members and friends who subsequently move into the apartment are not protected unless the landlord consents to the occupancy and accepts rent from the new occupant, thus creating a new tenancy. (*Cobb v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (2002) 98 Cal.App.4th 345, 351-353.).

Whether the application of rent control protection to occupants who begin their residency as minors is wise economic policy is a question for legislative, not judicial, determination. Local and state legislators are free to make these public policy determinations provided the rent regulation does not deprive property owners of a fair return on their investment. (*Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1021.) No

11

claim of a confiscatory taking is raised in this case. We must therefore apply the law as written, and the current law does not permit vacancy decontrol until all lawful *occupants* residing in a dwelling at the start of the tenancy vacate the premises. (§ 1954.53, subd. (d)(2) & (3).)

## Disposition

The order is affirmed.

_____
Pollak, J.

We concur:

_____
McGuiness, P. J.

_____
Siggins, J.

A141134

Superior Court of the City and County of San Francisco, No. CPF-12-512697, Ronald E. Quidachay, Judge.

Fried & Williams LLP, Clifford E. Fried, for Plaintiff and Appellant.

Dennis J. Herrera, City Attorney, and Wayne K. Snodgrass, Deputy City Attorney, for Defendant and Respondent.