Filed 5/19/26 (unmodified opinion attached)

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| COLONIAL MANOR, INC., | No. 24APLC00316 |
| Plaintiff and Appellant, | Santa Monica Trial Court |
| v. | No. 24SMUD00651 |
| VILMA REYES, | |
| Defendant and Respondent. | **ORDER** |

It is ordered that the opinion filed on April 23, 2026, be modified as follows:

1. On page 4, line 1, the word "argument" is changed to "arguments".

2. On page 4, line 3, a comma is to be inserted between the words "Reyes" and "who".

3. On page 5, the last sentence of the first full paragraph, starting on line 15 and ending on line 17, including the citation and footnote 6, is deleted, and the numbering of the subsequent footnotes shall be readjusted.

4. On page 6, the last sentence of the first full paragraph, starting on line 11 and ending on line 13, including the citation, is deleted, and the following is inserted in its place:

   It is the lessor's burden to allege and prove compliance with section 1806 of the SMRCCA (SMRCCA, art. XVIII, § 1806, subd. (e)); however, a lessor's failure to comply with any requirement of this section may be asserted by the lessee as an affirmative defense (*id*., subd. (f)).

5. On page 13, line 1, the word "affirmative" is deleted.

jl

6. On page 13, the citation starting on line 1 and ending on line 2 is deleted, and the following is inserted in its place:

(SMRCCA, art. XVIII, § 1806, subd. (f)).

There is no change in the judgment. (Cal. Rules of Court, rule 8.888(b)(2).)

Defendant's May 8, 2026 petition for rehearing and application to certify the case for transfer to the Court of Appeal, and plaintiff's May 8, 2026 application to certify the case for transfer to the Court of Appeal, are denied. (Code Civ. Proc., § 911; Cal. Rules of Court, rules 8.889, 8.1005(a)(1).)

_____          _____          _____
P. McKay, P. J.                    Ricciardulli, J.                   Guillemet, J.

2

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| COLONIAL MANOR, INC., | ) | 24APLC00316 |
| Plaintiff and Appellant, | ) | Santa Monica Trial Court |
| v. | ) | No. 24SMUD00651 |
| VILMA REYES, | ) | **OPINION** |
| Defendant and Respondent. | ) | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark A. Young, Judge.  Affirmed.

Dennis P. Block, for Plaintiff and Appellant.

Munger, Tolles & Olson and Michael E. Soloff, for Defendant and Respondent.

\*          \*          \*

Plaintiff Colonial Manor, Inc.[1] appeals an unlawful detainer judgment entered in favor of defendant Vilma Reyes, following a court trial adjudicated on stipulated facts. It is plaintiff's contention the trial court erred in its determination that the Santa Monica Rent Control Charter Amendment ("SMRCCA") was not preempted by Civil Code section 1954.53 (part of the Costa-Hawkins Rental Housing Act ("Costa-Hawkins")), and that following the death of defendant's spouse—the original tenant—the rent increase was unlawful under the SMRCCA.[2] Affirming the judgment, we conclude that defendant was an at-will tenant pursuant to an implied tenancy, and that defendant was protected by the SMRCCA which was not preempted.

## BACKGROUND

On March 14, 2024, plaintiff filed a complaint against defendant alleging a cause of action for unlawful detainer, seeking possession of a rental property located in the City of Santa Monica ("City"). The complaint alleged that on January 3, 2017, defendant agreed to rent the premises under an oral month-to-month tenancy, for rent of $3,500 per month;[3] on March 5, 2024, plaintiff caused to be served upon defendant a three-day notice to pay past due rent of $3,500 for the month of March 2024 or quit the premises; and, as of March 8, 2024, defendant failed to pay the rent due or quit the premises. Defendant's answer denied certain provisions of the complaint and alleged affirmative defenses, including violations of the SMRCCA.[4]

---

[1]  The complaint was filed by "Colonial Manor Inc." and judgment was entered against this entity. The notice of appeal, however, identifies plaintiff as "Colonial Manner, Inc."

[2] All further statutory references are to the Civil Code unless otherwise indicated.

[3] The wording of the complaint conflicts with plaintiff's position that there was no tenancy relationship with defendant, and it is undisputed that defendant did *not* agree to pay rent of $3,500.

[4] The trial court, on defendant's request and over plaintiff's objection, found this case was related to a tenant harassment action filed by the City against plaintiff, involving the same attempted eviction of defendant. (Cal. Rules of Court, rule 3.300(a).) The tenant harassment action was deemed to be the lead case. Some trial court documentation refers to the City as the plaintiff and Colonial Manor, Inc. as the defendant; however, we use the party designations from the unlawful detainer action.

The parties filed a joint statement of stipulated facts for the nonjury trial.[5]  The stipulation provided as follows: plaintiff owned the property; Milton Reyes was the original tenant whose rent was $666 per month; defendant had lived in the unit with Milton Reyes for at least one year before they married on February 26, 2022; Milton Reyes died on September 8, 2023; defendant never paid rent to Milton Reyes, and they never entered into a written, verbal or implied agreement for Milton Reyes to transfer his leasehold interest to defendant; defendant continued to occupy the premises after Milton Reyes's death; the City determined that the maximum allowable rent for the unit permitted under the SMRCCA was $669 per month; on November 15, 2023, plaintiff served defendant with a Notice of Change of Tenancy increasing the rent to $3,500 per month; on March 5, 2024, defendant was served with the three-day notice to pay rent or quit, and defendant did not tender payment after service of the notice.

Both parties filed trial briefs.  Plaintiff argued that following the death of Milton Reyes, the month-to-month tenancy terminated upon notice of his death, or 30 days after the date of his last rent payment he made while alive.  (§ 1934; *Miller & Desatnik Management Co. v. Bullock* (1990) 221 Cal.App.3d Supp. 13, 17-18 (*Miller*).)  Plaintiff further posited that pursuant to section 1954.53, subdivision (d)(2),[6] it was authorized to impose any rent increase upon defendant as a subtenant, and that to the extent defendant was arguably protected under the SMRCCA, the latter was preempted by the former.  Defendant argued that because she resided in the unit as a lawful occupant and then as a surviving spouse of Milton Reyes, she was a tenant and not a subtenant, the SMRCCA prohibited the 425% rent increase and was not preempted by section 1954.53, and the three-day notice to pay rent or quit was defective.

---

[5] The stipulation, which was drafted for the tenant harassment action, does not address when defendant moved into the premises or when plaintiff became aware of her occupation.

[6] "If the original occupant or occupants who took possession of the dwelling or unit pursuant to the rental agreement with the owner no longer permanently reside there, an owner may increase the rent by any amount allowed by this section to a lawful sublessee or assignee who did not reside at the dwelling or unit prior to January 1, 1996."  (§ 1954.53, subd. (d)(2).)

At trial, both parties offered argument that reinforced their trial briefs. Plaintiff's counsel represented that since 2021, plaintiff was aware of defendant's residency status in the unit as a caregiver to Milton Reyes who had severe dementia, and that plaintiff was not aware of the marriage until October 2023. There may have been a written lease, but plaintiff's records were incomplete after a recent ownership transfer that occurred following a death. The court entered judgment in favor of defendant for possession of the subject premises. The court conducted a thorough statutory interpretation analysis, finding that defendant was not a sublessee or assignee, and that the plain language and legislative history of section 1954.53 did not authorize an unlimited rent increase against defendant, as the spouse of the original occupant. The court relied in part on Family Code section 914, which makes each spouse personally liable for any debts incurred by another spouse for the necessaries of life, in finding that defendant was a tenant, and not a subtenant. Because the rent increase was unauthorized under the SMRCCA, the court ruled that the three-day notice overstated the amount of rent due, and defendant was entitled to judgment due to the defective notice.

## DISCUSSION

Plaintiff contends: (1) the tenancy terminated by operation of law 30 days after the last rent payment made by Milton Reyes; (2) the SMRCCA was preempted by section 1954.53; (3) following the death of Milton Reyes, plaintiff was authorized to raise the rent without limit pursuant to section 1954.53; and (4) even if not preempted, section 1806(c) of the SMRCCA does not limit rent increases for a surviving spouse who was not an authorized occupant. Our assessment requires an independent examination of the relevant legislative enactments. (*California Apartment Assn. v. City of Pasadena* (2025) 117 Cal.App.5th 187, 228.)

When interpreting a statute, our primary task is to effectuate the Legislature's intent. (*Mosser Companies v. San Francisco Rent Stabilization & Arbitration Bd*. (2015) 233 Cal.App.4th 505, 512 (*Mosser*).) "'"'We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally

4

follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.'"'" (*Ibid.*)

To succeed in a failure-to-pay unlawful detainer requires the lessor to prove by a preponderance of the evidence that the tenant defaulted on his or her obligation to pay rent, the tenant was properly served with written notice to pay rent or quit the premises of at least three days, and the tenant failed to pay rent or quit possession of the premises after expiration of the notice period. (Code Civ. Proc., § 1161, subd. (2); *Frazier v. Superior Court* (2022) 86 Cal.App.5th Supp. 1, 7.) A valid three-day notice is a prerequisite to an unlawful detainer action. (*Eshagian v. Cepeda* (2025) 112 Cal.App.5th 433, 457.) The notice must correctly state the amount of rent that is due. (§ 1161, subd. (2); *Bawa v. Terhune* (2019) 33 Cal.App.5th Supp. 1, 5-6.) Accordingly, a notice that overstates the rent due is fatal to a lessor's claim of right to possession. (*Bevill v. Zoura* (1994) 27 Cal.App.4th 694, 697.) Overstatement of rent owed is an affirmative defense for which the lessee bears the burden of proof. (*360 So Reeves, LLC v. Dutton* (2026) 119 Cal.App.5th Supp. 1, 12 (*360 So Reeves*).)[7]

"A municipality may, under its general police powers (Cal. Const., art. XI, §7), enact additional regulations to the grounds for eviction to the extent it is not preempted by state law." (*Frazier v. Superior Court*, *supra*, 86 Cal.App.5th at p. Supp. 7; accord, § 1954.53, subd. (e); see also *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 148-149.) "In 1979, the City of Santa Monica . . . adopted a rent control charter amendment, which established a rent control board to regulate rentals 'so that rents will not be increased unreasonably and so that landlords will receive no more than a fair return.' [Citation.] Pursuant to this charter amendment, the rent control board adopted regulations that established a maximum percentage by which rental rates could increase each year." (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1237.)

---

[7] Plaintiff had the opportunity to brief the application of *360 So Reeves*, which was filed before plaintiff's deadline to file a reply brief. (Gov. Code, § 68081.)

5

The SMRCCA prohibits a lessor from serving any notice or bringing an action to recover possession of a rent-controlled unit unless "[t]he tenant has failed to pay the rent to which the landlord is entitled under the rental housing agreement and this Article." (SMRCCA, art. XVIII, § 1806, subd. (a)(1).) The charter also provides that if a "tenant's spouse . . . ha[s] lived in the unit for at least one year at the time the tenant vacates the unit due to death or incapacitation, the landlord is prohibited from taking any action to obtain possession of the unit from the tenant's spouse . . . on the ground that the spouse . . . [is] not authorized to occupy the unit." (*Id*., subd. (c).) Rent that exceeds the permissible ceiling is unlawful. (SMRCCA, art. XVIII, § 1805, subd. (a)(3).) A lessor's failure to comply with these provisions of the SMRCCA is an affirmative defense to an eviction. (SMRCCA, art. XVIII, §§ 1805, subd. (h)(2), 1806, subd. (f).)

A legislative enactment is preempted when it is contrary or inimical to state law. (*California Apartment Assn. v. City of Pasadena*, *supra*, 117 Cal.App.5th at p. 229.) An ordinance is inimical if it permits what state law forbids or prohibits what state law demands. (*Ibid*.) "'[N]o inimical conflict will be found where it is reasonably possible to comply with both the state and local laws.'" (*Ibid*.) "There is generally a 'strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears."' [Citations.] "'[A]bsent a clear indication of preemptive intent from the Legislature," we presume that local regulation "in an area over which [the local government] traditionally has exercised control" is not preempted by state law. [Citation.] "The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption."'" (*Rental Housing Assn. of Northern Alameda County v. City of Oakland* (2009) 171 Cal.App.4th 741, 752.)

Enacted in 1995, Costa-Hawkins "established 'what is known among landlord-tenant specialists as "vacancy decontrol," declaring that "[n]otwithstanding any other provision of law," all residential landlords may, except in specified situations, "establish the initial rental rate for a dwelling or unit." [Citation.]' [Citation.] The effect of this provision was to permit landlords 'to impose whatever rent they choose at the commencement of a tenancy.' [Citation.]

The Legislature was well aware, however, that such vacancy decontrol gave landlords an incentive to evict tenants that were paying rents below market rates. [Citation.] Accordingly, the statute expressly preserves the authority of local governments 'to regulate or monitor the grounds for eviction.'" (*Action Apartment Assn., Inc. v. City of Santa Monica*, *supra*, 41 Cal.4th at pp. 1237-1238.)

As pertinent to this appeal, section 1954.53 provides that "an owner of residential real property may establish the initial rental rate for a dwelling or unit" (§ 1954.53, subd. (a)); however, under subdivision (b), "the rent level established upon an 'initial hiring' applies to a 'tenant, lessee, authorized subtenant, or authorized sublessee for the entire period of his or her occupancy. . . .'" (*DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 41 (*DeZerega*), italics omitted.) Then, when "the original occupant or occupants who took possession of the dwelling or unit pursuant to the rental agreement with the owner no longer permanently reside there, an owner may increase the rent by any amount allowed by this section to a lawful sublessee or assignee who did not reside at the dwelling or unit prior to January 1, 1996." (§ 1954.53, subd. (d)(2).) "This subdivision does not apply to partial changes in occupancy of a dwelling or unit where one or more of the occupants of the premises, pursuant to the agreement with the owner provided for above, remains an occupant in lawful possession of the dwelling or unit, . . ." (*Id.*, subd. (d)(3).) Costa Hawkins explicitly allows cities to regulate evictions to the extent it is not preempted by statute. (*Id.*, subd. (e); § 1954.52, subd. (c); *DeZerega*, *supra*, at p. 40.)

In *Parkmerced Co. v. San Francisco Rent Stabilization & Arbitration Bd*. (1989) 215 Cal.App.3d 490, 493 (*Parkmerced*), a local ordinance limited rent increases upon any tenant, subtenant or any other legitimate occupant of a dwelling unit. The Court of Appeal held that the rent protection ordinance—which defined a tenant as "'[a] person entitled by written or oral agreement, sub-tenancy approved by the landlord, or by sufferance, to occupy a residential dwelling unit to the exclusion of others'"—extended to the named tenant's sister, even after the named tenant moved out, reasoning that the rent ordinance "clearly focuses on occupancy as the factor which triggers rent control protection," and that an adoption of the lessor's "narrow and unduly restrictive interpretation of the Ordinance . . . would undermine the intent of the

legislation and deny rent control protection to a long-term resident who occupied her apartment with the owner's knowledge and consent, albeit without a formal lease." (*Id*. at pp. 493-496.)

In *Miller*, the tenant resided in a rent-controlled apartment in the City of Santa Monica. (*Miller*, *supra*, 221 Cal.App.3d at p. Supp. 15.) After the tenant died, her mother, who did not live in the apartment, continued making the rent payments in her daughter's name and did not inform the lessor of the death. (*Id*. at p. Supp. 16.) The lessor served the mother with a 30-day notice to vacate and refused to accept any further rental payments after learning of the tenant's death. (*Ibid*.) This court rejected the mother's contention that she was entitled to the protections of the SMRCCA, explaining that the mother "was neither a tenant, subtenant, lessee, or a sublessee under the rental agreement; nor was she entitled to the use or occupancy of the apartment under the agreement. Although she continued to pay rent after her daughter's death, she did so under the subterfuge that her deceased daughter was the one making the payments." (*Id*. at pp. Supp. 19-20, fn. omitted.) Distinguishing the case from *Parkmerced*, this court relied on the fact that the mother was "virtually unknown to the landlord, and certainly was not a lawful occupant." (*Id*. at p. 20, fn. 6.)

In *DeZerega*, a tenant signed a written lease which permitted occupancy by two other unnamed roommates. (*DeZerega*, *supra*, 83 Cal.App.4th at pp. 31-32.) After the defendant moved into the unit as an unnamed roommate, one of the named tenants notified the plaintiff that she wished to end her tenancy. (*Ibid*.) The defendant refused to vacate the premises after one of the other tenants served him with a 30-day notice to quit. (*Id*. at p. 32.) Several months later, the plaintiff initiated an unlawful detainer action against the defendant based on the premise that one of the named tenants terminated his subtenancy. (*Id*. at p. 34.) The trial court entered judgment in favor of defendant after finding that he was a tenant, and that even if he was only a subtenant, under the local ordinance, he was entitled to continue the occupancy in the absence of good cause for eviction. (*Id*. at p. 35.) Affirming, the appellate court rejected the claim that the ordinance was preempted by Costa-Hawkins, holding that while section 1954.53 is "seriously muddled," "[t]aken together these provisions compel the conclusion that an occupancy by a subtenant, 'roommate,' or other person occupying the premises 'pursuant to

8

the rental agreement with the owner' is treated as a continuation of the original occupancy, even though the named 'tenant' under the rental agreement may have vacated." (*Id*. at p. 41.) However, the court declined to "decide whether a landlord may be barred from evicting a subtenant, or other occupant, who has occupied the premises without the landlord's agreement or knowledge and who seeks to remain on the premises after the departure of all persons to whose occupancy the landlord has consented." (*Id*. at pp. 41-42.)

In *Mosser*, married tenants resided in a rent-controlled unit with their three children, including their 13-year-old son. (*Mosser*, *supra*, 233 Cal.App.4th at pp. 508-509.) Years later, the tenants moved out of the apartment except for the son, then 23 years old. (*Id*. at p. 509.) After the lessor served a notice purporting to double the rent, the rent control board deemed the increase unlawful, reasoning that the son was a legal original occupant with his parents and was entitled to rent control even after his parents vacated the apartment. (*Id*. at pp. 509-510.) The trial court denied the lessor's writ petition and adopted the rent control board's interpretation of the ordinance. (*Id*. at p. 510.) The Court of Appeal affirmed, holding that rent decontrol under Costa-Hawkins is triggered only when all original occupants vacate the premises. (*Id*. at p. 513.) Citing *DeZerega*, the court explained that "a person occupies the premises 'pursuant to the rental agreement with the owner' [citation] if he or she does so with the owner's permission," and that "[a] lawful occupancy of this nature 'is treated as a continuation of the original occupancy, even though the named "tenant" under the rental agreement may have vacated.'" (*Id*. at p. 515.) Furthermore, "[t]he Legislature was presumably aware of San Francisco's ordinance, and its judicial construction [in *Parkmerced*], when adopting the Act, yet expressed no intention to preempt the law." (*Id*. at p. 514.)

In the case *sub judice*, it is undisputed that defendant resided in the premises with Milton Reyes until at least 2021, that defendant and Milton Reyes were married on February 26, 2022, and that Milton Reyes died on September 8, 2023. By operation of law, Milton Reyes's tenancy expired the following month. (*Miller*, *supra*, 221 Cal.App.3d at p. Supp. 18.) Plaintiff's contention that defendant was a sublessee—who would be subject to rent decontrol upon the death of Milton Reyes—has no merit. A sublease is a contract between a tenant and

9

subtenant, transferring a portion of the tenant's interest in the lease to the subtenant, with the tenant retaining a future right of reentry. (*Cobb v. San Francisco Residential Rent Stabilization and Arbitration Bd*. (2002) 98 Cal.App.4th 345, 352.) There was no evidence in the stipulated facts of the requisites that Milton Reyes transferred any portion of his leasehold interest to defendant or that defendant paid rent to Milton Reyes.[8] In fact, if defendant was a sublessee, her only obligation to pay rent would have been to Milton Reyes as the sublessor (*Hartman Ranch Co. v. Associated Oil Co*. (1937) 10 Cal.2d 232, 242), which conflicts with the basis of the three-day notice—that defendant was delinquent in her rent obligations owed to plaintiff "pursuant to the lease or rental agreement under which you hold . . . possession of the . . . premises[.]"[9]

Rather than being a sublessee, the evidence and the law support the court's conclusion that defendant became an implied tenant in her own right. "Under the Costa-Hawkins Act, '[t]enancy' includes the lawful occupation of property, . . ." (*Cobb v. San Francisco Residential Rent Stabilization and Arbitration Bd*., *supra*, 98 Cal.App.4th at p. 352; accord, § 1954.51, subd. (f).) This definition is in accord with case law (*Mosser*, *supra*, 233 Cal.App.4th at p. 516 ["One may become a tenant by occupancy with consent"]; *Parkmerced*, *supra*, 215 Cal.App.3d at pp. 494-495 [same]), and the SMRCCA which defines the term "tenant" as "[a] tenant, subtenant, lessee, sublessee or any other person entitled under the terms of a rental housing agreement[10] to the use or occupancy of any rental unit" (SMRCCA, art. XVIII, § 1801). "'A permissive occupation of real estate, where no rent is reserved or paid and no time

---

[8] Plaintiff does not claim that defendant was an assignee, which would require proof that Milton Reyes transferred his entire leasehold interest to defendant. (*Vallely Investments, L.P. v. BancAmerica Commercial Corp*. (2001) 88 Cal.App.4th 816, 823.)

[9] This type of subtenancy arrangement would arguably conflict with the Family Code, which prohibits spouses from excluding each other from their dwelling, requires spouses to financially support each other, and makes each spouse personally liable for debts incurred for necessities of life during each spouse's lifetime. (Fam. Code, §§ 753, 914, 4300.)

[10] A "Rental Housing Agreement" includes an implied agreement for use or occupancy of a rental unit. (SMRCCA, art. XVIII, § 1801.)

agreed on to limit the occupation, is a tenancy at will.'" (*Borden v. Stiles* (2023) 92 Cal.App.5th 337, 348; accord, *Pacific Coast Joint Stock Land Bank of San Francisco v. Jones* (1939) 14 Cal.2d 8, 14.)

Considering that the complaint alleged defendant occupied the premises since 2017, that plaintiff was aware of defendant's long-term occupancy of the unit—including a period of 18 months when defendant was married to the original tenant, that the November 15, 2023 Notice of Change of Terms of Tenancy identified defendant as "*the tenant* who is in possession of the premises" and stated "*your tenancy* of the above designated premises will be changed" (italics added), and that the three-day notice alleged defendant was delinquent in her rent payments "pursuant to the lease or rental agreement under which you hold the possession of the . . . premises," we conclude an implied at-will tenancy was created.[11] (*Borden v. Stiles*, *supra*, 92 Cal.App.5th at p. 348; § 1954.51, subd. (f); see SMRCCA, art. XVIII, § 1801; see also *Parkmerced*, *supra*, 215 Cal.App.3d at p. 495; cf. *Miller*, *supra*, 221 Cal.App.3d at p. Supp. 20, fn. 6 [tenant's mother who did not reside at the property and was "virtually unknown" to the lessor, was not protected under the rent control ordinance].)

Because defendant was an at-will tenant, and not a sublessee or assignee, she did not fall within the narrow parameters of section 1954.53, subdivision (d)(2). There is no clear indication the Legislature intended to preempt the City from extending its protections to defendant, as the spouse of Milton Reyes, a lawful occupant, or as an at-will tenant by implied agreement. As explained by the *Mosser* court, "[t]he Legislature's use of distinct terms indicates different intended meanings. Had the Legislature meant rent decontrol to occur when the party to the rental agreement vacates, it could easily have used the term 'party,' as it did in subdivision (d)(4) concerning sublease prohibition waivers. '"[W]hen different words are used in contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that a difference in meaning was intended."'" (*Mosser*, *supra*, 233 Cal.App.4th at p. 513.)

---

[11] At trial, plaintiff's counsel represented to the court that as of 2021, plaintiff was aware defendant was residing in the unit with Milton Reyes as a caregiver, and there is no indication that plaintiff objected to her occupation.

Applying the presumption that the City's legislative enactments must be upheld, plaintiff fails to overcome its burden to establish that the SMRCCA is inimical to section 1954.53. (See *Rental Housing Assn. of Northern Alameda County v. City of Oakland*, *supra*, 171 Cal.App.4th at p. 752.)

Plaintiff's remaining argument is that even if not preempted, section 1806, subdivision (c) of the SMRCC—prohibiting a lessor from taking any action to obtain possession of a unit from a tenant's spouse on the ground that the spouse is not authorized to occupy the unit— "imposes no limitations on increases in rent for a surviving spouse after the death of their tenant spouse, but merely prohibits terminating the tenancy based on unauthorized occupancy." This argument ignores other applicable provisions of the SMRCCA and that plaintiff considered defendant to be a tenant in her own right.[12] The SMRCCA prohibited plaintiff from serving any notice to quit or bringing an action to recover possession of the unit unless defendant failed to pay the rent to which plaintiff was entitled. (SMRCCA, art. XVIII, § 1806, subd. (a)(1).) The 425% rent increase imposed by plaintiff exceeded the rent ceiling (SMRCCA, art. XVIII, § 1805, subd. (a)(3)), resulting in an overstatement of rent. A notice that overstates the rent due is "fatally defective" (*Heffesse v. Guevara* (2025) 108 Cal.App.5th Supp. 74, 83; accord, *Jayasinghe v. Lee* (1993) 13 Cal.App.4th Supp. 33, 37), and plaintiff's failure to comply with the SMRCCA served as a complete affirmative defense to the action (SMRCCA, art. XVIII, §§ 1805, subd. (h)(2), 1806, subd. (f)).

## DISPOSITION

The judgment is affirmed. Defendant is entitled to recover her costs on appeal.

_____
P. McKay, P. J.

---

[12] The trial court's decision only relied on SMRCCA section 1806, subdivision (c), but "as our review is de novo, our analysis proceeds independently of the trial court's reasoning." (*Sanowicz v. Bacal* (2015) 234 Cal.App.4th 1027, 1034, fn. 5.) Defendant raised the same analysis in her respondent's brief, but plaintiff declined to file a reply brief.

We concur:

_____          _____
Ricciardulli, J.                                              Guillemet, J.