Filed 6/16/15; pub. order 7/9/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| T & A DROLAPAS & SONS, LP,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>SAN FRANCISCO RESIDENTIAL RENT STABILIZATION AND ARBITRATION BOARD et al.,<br><br>     Defendants and Respondents;<br><br>GERALD BORJAS,<br><br>     Real Party in Interest and Respondent. | A139432<br><br>(City & County of San Francisco Super. Ct. No. CPF-12-511944) |

In this case we must decide whether Civil Code section 1954.53,[1] subdivision (d)(2) authorizes a San Francisco landlord to raise the rent without limit on an apartment otherwise subject to rent control when an occupant, who moved into the apartment as a child when his parents took possession, remained in possession of the unit after his parents vacated it. The San Francisco Residential Rent Stabilization and Arbitration Board (Rent Board) ruled in favor of the adult child in these circumstances and the superior court upheld its decision. On review here, we have the benefit of the recent opinion in *Mosser Companies v. San Francisco Rent Stabilization and Arbitration Board* (2015) 233 Cal.App.4th 505 (*Mosser Companies*) where a panel in Division Three of this

---

[1] Statutory references are to the Civil Code unless otherwise indicated.

district addressed the identical issue. Seeing no basis for distinguishing our case from *Mosser Companies* and no reason to disagree with the conclusions or the analysis in that case, we follow *Mosser Companies* and affirm the judgment.

## STATEMENT OF THE FACTS

On September 3, 1995, Javier and Barbara Lara began renting the apartment at 3380 21st Street, Unit 4, of a nine-unit building in San Francisco. The Laras took occupancy of the unit pursuant to a written rental agreement with the building's then owner, but no copy of that agreement now exists. Gerald Borjas (Borjas), the real party in interest and eldest of three Lara children, was six years old at the time he and his family moved into the apartment. There is no evidence that the occupancy by the entire family was in any manner inconsistent with the rental agreement or was without the landlord's permission. The initial rent on the apartment was $775.

Appellant, T & A Drolapas & Sons, LP (Drolapas), purchased the building containing the unit rented to the Laras in approximately April 2000. During escrow the Laras signed and provided to Drolapas an "Estoppel Certificate: Landlord Questionnaire" in which they stated that Javier and Barbara Lara were the "tenants" but that the unit was "occupied" by two adults and four children, and this was the "number of allowable tenants." Drolapas points out that the Estoppel Certificate was not signed by Borjas as the tenant, naturally enough, as he was approximately 11 years old at the time.

Javier and Barbara Lara bought a home in Daly City in December 2010 and began using that property as their principal residence. Borjas did not move with his parents to Daly City and has continuously lived in the unit on 21st Street in San Francisco. Because Borjas's income is sometimes unstable, Javier and Barbara Lara have continued to pay rent for the apartment on 21st Street. Borjas pays them rent for the apartment when he is able to do so.

On May 10, 2011, Drolapas served Javier and Barbara Lara with a 60-day notice of a rent increase from $1,171.32 to $2,000.00 per month, effective July 15, 2011. The notice stated that the unit did not fall within the jurisdiction of the San Francisco

Residential Rent Stabilization and Arbitration Ordinance because Javier and Barbara Lara no longer occupied it.

## PROCEDURAL BACKGROUND

Drolapas filed a landlord's petition with the Rent Board on May 10, 2011, seeking a determination that the unit was not subject to rent control pursuant to Rent Board Rules and Regulations and the Costa-Hawkins Rental Housing Act (the Costa-Hawkins Act or the Act) (§ 1954.50 et seq.). Borjas subsequently filed a tenant's petition alleging the rent increase was illegal and taking the position he was an "original occupant" of the premises.

Disputing that Borjas was an "original occupant," Drolapas claimed it was allowed to raise the rent on the unit by any amount it desired under section 1954.53, subdivision (d)(2), which provides as follows: "If the original occupant or occupants who took possession of the dwelling or unit pursuant to the rental agreement with the owner no longer permanently reside there, an owner may increase the rent by any amount allowed by this section to a lawful sublessee or assignee who did not reside at the dwelling or unit prior to January 1, 1996."

A Rent Board Administrative Law Judge (ALJ) heard the matter on September 15, 2011, and issued a decision on December 14, 2011. The ALJ agreed with Borjas, ruling that he "was an original occupant who took possession of the unit pursuant to the rental agreement in 1995, and that he continues to permanently reside in the unit." The ALJ also concluded that "even assuming Mr. Borjas was not an original occupant, the undisputed evidence showed that he was a subtenant who resided in the unit prior to January 1, 1996. Thus, whether Mr. Borjas is an original occupant or a subtenant who resided in the unit prior to January 1, 1996, Civil Code Section 1954.53(d)(2) does not authorize an unlimited rent increase." The ALJ declared the notice of rent increase to $2,000.00 per month was null and void. Drolapas appealed the decision to the entire Rent Board, which denied the appeal on January 31, 2012.

On February 15, 2012, Drolapas filed in superior court a petition for writ of administrative mandamus and complaint for declaratory relief, under Code of Civil

3

Procedure sections 1085 and 1094.5.  The petition sought a writ compelling the Rent Board to set aside its decision and further sought a trial de novo in superior court, or in the alternative an order compelling the Rent Board to conduct a new hearing with a declaration from the court that Borjas was not an original occupant or a subtenant who resided in the unit prior to January 1, 1996.

The matter was heard by Judge Ronald E. Quidachay on December 3, 2012, who denied the petition and the claim for declaratory relief in a written statement of decision filed April 15, 2013, and reduced to judgment June 4, 2013.  The court concluded that the Rent Board did not abuse its discretion in determining that Borjas was an original occupant under section 1954.53, subdivision (d)(2), or else was a subtenant who resided in the unit prior to January 1, 1996.  Either way, the court held, Borjas was entitled to the protection of the rent control ordinance.  Drolapas then filed a timely notice of appeal.

### DISCUSSION

On appeal, Drolapas contends Borjas did not qualify as an "original occupant" and, as a child, he did not "take possession" of the unit "pursuant to the rental agreement" in 1995.  It further contends Borjas was not a "subtenant who resided in the unit prior to January 1, 1996."

Ordinarily we review the decision whether to grant a writ of administrative mandamus to determine whether there was "a prejudicial abuse of discretion in the administrative agency's decision."  (*Cobb v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (2002) 98 Cal.App.4th 345, 350; Code Civ. Proc. § 1094.5, subd. (b).)  The arguments raised by appellant, however, present issues of statutory interpretation, pure questions of law on essentially undisputed facts, which are subject to de novo review.  (*Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 627; *Danekas v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (2001) 95 Cal.App.4th 638, 643.)

The Costa-Hawkins Act was enacted in 1995 to ameliorate the impact of local rent control efforts, and specifically vacancy control, through which rent controls in a few locales remained in place even when an apartment was voluntarily vacated and a new

4

tenancy began. The legislation was billed by proponents as a "moderate approach to overturn extreme vacancy control ordinances which unduly and unfairly interfere into the free market." (Bill Analysis of AB 1164 for the Assembly Floor (July 24, 1995) <http://www.leginfo.ca.gov/pub/95-96/bill/asm/ab_1151-1200/ab_1164_cfa_950724_180346_asm_floor.html> [as of June 15, 2015].) The Act preempts local rent control ordinances in some circumstances. "Its overall effect is to preempt local rent control ordinances in two respects. First it permits owners of certain types of property to adjust the rent on such property at will, '[n]otwithstanding any other provision of law.' (Civ. Code, § 1954.52, subd. (a).) Second it adopts a statewide system of what is known among landlord-tenant specialists as 'vacancy decontrol,' declaring that 'notwithstanding any other provision of law,' all residential landlords may, except in specified situations, 'establish the initial rental rate for a dwelling or unit.' (Civ. Code, § 1954.53, subd. (a).)" (*DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 40-41; accord, *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1237.) "San Francisco's ordinance is consistent with the Costa-Hawkins Act in allowing a landlord to set the initial rental rate on vacated units. (S.F. Admin. Code, § 37.3, subd. (d)(1).)" (*Mosser Companies*, *supra*, 233 Cal.App.4th at p. 511.) Determining when a tenancy ends and a new tenancy begins—so that the landlord may reset the rent without the constraint of local rent control—is the question posed by this appeal.

*Mosser Companies*, *supra*, 233 Cal.App.4th 505, dealt with a similar set of facts and the identical statute. In *Mosser Companies*, Brian, the current occupant of a rent-controlled apartment on Fell Street in San Francisco, had moved into the apartment when his parents took possession of it when he was 13 years old. (*Mosser Companies*, *supra*, at p. 509.) Nine years later, after two of their three children left home, Brian's parents moved to a different location, but Brian, who was then 23 years old, stayed on in the Fell Street apartment. (*Ibid.*) The landlord then announced it was raising the rent from $1,681.75 to $3,295 on the theory that the "original occupants"—Brian's parents—no longer lived in the apartment. (*Ibid.*) On the question of whether Borjas was an "original

5

occupant," we find *Mosser Companies* to be materially indistinguishable from the case before us.

Drolapas argues an "original occupant" must be a "tenant that is a party to the rental agreement." *Mosser Companies* rejected that interpretation and decided that "the son of parents who years before rented a unit in landlord's building, and who with landlord's consent resided with his parents when the rental agreement was entered, is an 'original occupant' within the meaning of the statute, precluding the landlord from establishing a new unrestricted rental rate for the apartment when the son remains in the apartment after the parents have departed." (*Mosser Companies*, *supra*, 233 Cal.App.4th at p. 508.) *Mosser Companies* concluded that "the son, although a minor when the rental agreement was entered and not a signatory to the rental agreement, is nonetheless an 'original occupant' entitled to the continued protection of the rent control provision." (*Ibid.*)

That settles the first of the issues raised by Drolapas. "An 'occupant' is commonly defined as 'one who occupies a particular place; *esp[ecially]:* RESIDENT.' (Merriam-Webster's Collegiate Dict. (11th ed. 2007) p. 858, col. 1.) The plain meaning of an 'original occupant … who took possession of the dwelling or unit pursuant to the rental agreement' (§ 1954.53, subd. (d)(2)) is an individual who has resided in the dwelling from the start of the tenancy with the landlord's permission." (*Mosser Companies*, *supra*, 233 Cal.App.4th at p. 512.) Even as a six-year-old child when he moved into the apartment, Borjas was an "original occupant" within the meaning of section 1954.53, subdivision (d)(2). This holding is, of course, consistent with the ruling of the Rent Board and the trial court in the present case.

Whether Borjas "took possession" of the unit "pursuant to the rental agreement," (§ 1954.53, subd. (d)(2)) considering he was a minor when he entered into occupancy of the apartment in 1995, was also settled by *Mosser Companies*: " 'Possession' is a commonly understood term normally referring to physical possession. Limiting the term to parties to a legal agreement is inconsistent both with this common understanding and with the terms used in the statute. The statute refers to an 'occupant' rather than a

6

'tenant,' 'lessee,' or 'party.' These terms have distinct and well-established meanings, making it unlikely the Legislature used the term 'occupant' when it meant party to a rental agreement. That the Legislature's use of the term 'occupant' was deliberate and intended to signify something distinct from a party to the lease is confirmed when the statute is read as a whole." (*Mosser Companies*, *supra*, 233 Cal.App.4th at p. 513.)

Finally, we address a portion of the statutory language not at issue in *Mosser Companies*, namely the provision relating to subtenants who inhabited the rent-controlled unit prior to the effective date of the Act. First, we find nothing inconsistent in the Rent Board's or trial court's ruling that Borjas was both an "original occupant" and a "subtenant." Drolapas's argument to the contrary is based on the notion that an "original occupant" must be one who took possession as a "tenant that is a party to the rental agreement." Having rejected that premise, we also reject the notion that a single individual cannot be both an "original occupant" and a "subtenant."

As we read the statute, when the original occupants have vacated a rent-controlled unit, section 1954.53, subdivision (d)(2) allows rent increases "to a lawful sublessee or assignee who did not reside at the dwelling or unit prior to January 1, 1996." This language necessarily implies that the landlord may *not* increase the rent without limit if the sublessee or assignee *did* reside in the unit prior to January 1, 1996. We find no error in the Rent Board's or court's conclusion that Borjas was a "subtenant who resided in the unit prior to January 1, 1996." The court correctly saw the subtenant issue as an "alternative holding provid[ing] a distinct ground for denial of the writ petition and declaratory relief claim."

Drolapas argues Borjas did not become a subtenant until 2011 because his parents continued as the tenants under the lease and continued paying the rent. According to Drolapas, the statute prohibits open-ended rent increases only for those who were subtenants prior to January 1, 1996. But that temporal connection is not contained in the language of the statute, and we will not read such a limitation into it. The clause has two requirements: (1) the individual must be a "lawful sublessee or assignee," and (2) he or she must have "reside[d] at the dwelling or unit prior to January 1, 1996." (§ 1954.53,

7

subd. (d)(2).) There is no requirement under the statute that those two qualifications must have been met simultaneously. Borjas was a subtenant beginning in 2011, and he did reside in the unit prior to January 1, 1996. Because he met both requirements, he was entitled to the protection of the local rent control ordinance.

Certain countervailing policy arguments might well counsel against allowing a rent-controlled apartment to be passed on "from friend to friend or generation to generation." But it seems to us the risk of that happening can be overstated easily. "[T]he protection afforded here is limited in scope to *lawful* and *original* occupants. A rent-controlled apartment cannot, as landlord fears, be passed on freely 'from friend to friend or generation to generation.' Only those occupants who reside in the apartment at the start of the tenancy and do so with the landlord's express or implicit consent are protected from unregulated rent increases." (*Mosser Companies*, *supra*, 233 Cal.App.4th at p. 516.)

In any event, as *Mosser Companies* pointed out: "Although a compelling policy argument can be made for qualifying rent control restrictions when a tenancy passes from one generation to the next, the current statute incorporates no such qualification. We therefore conclude that the rent board correctly prohibited landlord from increasing the rent to the son above the rent control limit when his parents vacated the apartment, and the trial court correctly denied landlord's petition for a writ of mandate challenging the rent board's action." (*Mosser Companies*, *supra*, 233 Cal.App.4th at p. 508.)

We too conclude: "Whether the application of rent control protection to occupants who begin their residency as minors is wise economic policy is a question for legislative, not judicial, determination. Local and state legislators are free to make these public policy determinations provided the rent regulation does not deprive property owners of a fair return on their investment. (*Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1021.) No claim of a confiscatory taking is raised in this case. We must therefore apply the law as written, and the current law does not permit vacancy decontrol until all lawful *occupants* residing in a dwelling at the start of the tenancy vacate the premises. (§ 1954.53, subd. (d)(2) & (3).)" (*Mosser Companies*, *supra*, 233 Cal.App.4th at p. 517.)

8

**DISPOSITION**

The judgment is affirmed.

_____
Streeter, J.

We concur:

_____
Ruvolo, P.J.

_____
Reardon, J.

Filed 7/9/15 after filing
nonpublished opinion 6/16/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| T & A DROLAPAS & SONS, LP,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>SAN FRANCISCO RESIDENTIAL RENT STABILIZATION AND ARBITRATION BOARD et al.,<br><br>     Defendants and Respondents;<br><br>GERALD BORJAS,<br><br>     Real Party in Interest and Respondent. | A139432<br><br>(City & County of San Francisco Super. Ct. No. CPF-12-511944)<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION** |

THE COURT:

The opinion in the above-entitled matter filed on June 16, 2015, was not certified for publication in the Official Reports. For good cause, the request for publication is granted.

Pursuant to California Rules of Court, rules 8.1105 and 8.1120, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports. Listing of counsel is attached hereto.

Dated: _____          _____

                                                          Ruvolo, P.J.

<u>T & A Drolapas & Sons, LP v. San Francisco Residential Rent Stabilization and Arbitration Board (A139432)</u>

Trial court:                City & County of San Francisco Superior Court

Trial judge:               Hon. Ronald Quidachay

Counsel for Plaintiff/Appellant:   Fried & Williams, Clifford E. Fried

Counsel for Defendants/
Respondents:             San Francisco Office of the City Attorney
Dennis J. Herrera, City Attorney,
Wayne K. Snodgrass, Deputy City Attorney